UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARY LEY,

        Plaintiff,

v.                                                                                                      Case No. 09-C-1108

WISCONSIN BELL, INC.,

        Defendant.

**MEMORANDUM AND ORDER**

On January 24, 2007, plaintiff Mary Ley (Ley) filed a complaint against her former employer, Wisconsin Bell, Inc. (Wisconsin Bell), alleging Wisconsin Bell violated the Americans with Disabilities Act (ADA) by terminating her employment shortly after – and because – she was diagnosed with Multiple Sclerosis (MS). Ley also alleges that Wisconsin Bell terminated her in retaliation for her use of leave under the Family and Medical Leave Act (FMLA). Wisconsin Bell counters that Ley was terminated because of her poor handling of several phone calls at work. Wisconsin Bell now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth herein the motion will be denied.

**I. Background**

Ley started her employment with Wisconsin Bell in 2001 and worked for the company until her termination on August 31, 2007. She was a customer service representative who worked in the Appleton, Wisconsin call center. Ley's responsibilities included fielding incoming calls from

residential customers who called with questions regarding service, billing, and orders. At the call center Ley worked in a cubicle and used a computer and headset to handle her calls.

In February 2007 Ley began having serious medical problems. (Compl. ¶ 19.) She experienced earaches, vertigo and difficulty speaking. She was only able to work about one hour per week and, in March 2007, Wisconsin Bell approved her use of FMLA leave. (Compl. ¶ 20.) On March 29, 2007 Ley was diagnosed with multiple sclerosis.

After her diagnosis Ley asked Wisconsin Bell to accommodate her by reducing her overtime hours and allowing her to take medical leaves. Wisconsin Bell generally complied with her accommodation requests. (Compl. ¶ 85.) In early April 2007, Ley started a six-week short term disability leave. (Compl. ¶ 86.) She returned to work on May 15, 2007 on a reduced work schedule of 5 hours per day. (Compl. ¶ 89.) On July 1, 2007 Ley resumed a normal 40 hour per week schedule. Her doctor advised her not to work overtime and Wisconsin Bell accommodated her in that respect. On July 23, 2007 Ley took 3.25 hours of approved medical leave. (Compl. ¶ 93.)

During the six years she worked at Wisconsin Bell Ley generally received positive performance reviews. (Def's Resp. to Plaintiff's Additional Prop. Findings of Fact, hereinafter "DRPF", Dkt. 27 at ¶ 8.) She received dozens of awards, certificates, and congratulatory notes for her work. (DRPF ¶ 9.)

At the Appleton call center Wisconsin Bell had a system in place to monitor and review phone calls. The company maintained audio recordings of all calls handled by customer service representatives at the call center. (Plaintiff's Resp. to Def. Proposed Findings of Fact, hereinafter "PRDFF", Dkt. 23 at ¶ 20.) For 25 % of such calls the company also recorded the employees'

computer activity during the call. (*Id.*) Wisconsin Bell's Contact Quality Center evaluated a portion of calls handled by each customer service representative each month. (PRDFF ¶ 24.)

In the present lawsuit the parties dispute Ley's handling of at least three specific phone calls, the details of which are addressed in the analysis section of this decision. For context it is worth noting several undisputed facts related to the calls. On September 5, 2006 Ley fielded a phone call while working in the Appleton call center. The next day she received a "final written warning" for her handling of the call. (PRDFF ¶ 31.) Approximately eleven months later, on August 2, 2007, a customer named Ms. Wells complained to management about how Ley handled an August 1, 2007 phone call. (PRDFF at ¶ 45.) Ley's supervisor, Cheryl Devroy, learned of the August 1st call from the manager who took Ms. Wells' complaint about Ley. (PRDFF ¶ 46.) On August 3, 2007 Ley fielded a phone call from a different customer named Ms. Smith. (PRDFF ¶ 47.) The call center's Contact Quality Center recorded the August 3rd call and at some point Manager Devroy listened to the call. (PRDFF ¶ ¶ 54-55.) After learning about and reviewing the calls Manager Devroy discussed the phone calls with her boss, Senior Manager Al Rockman.

On August 14, 2007 Manager Devroy met with Ley to discuss Ley's handling of the August 1st and August 3rd phone calls – calls the company recorded and reviewed. (PRDFF ¶ 59.) At that time Ley requested union representation, which she was entitled to as a member of the Communication Workers of America Union. (PRDFF ¶ 4 and ¶ 59.) The next day Ley and her union representative met with Wisconsin Bell managers. (PRDFF ¶ 60.) At the conclusion of the meeting Ley was "suspended pending termination". (*Id.*) A Union-Management Review Board was set for August 30, 2007 to allow the Union an opportunity to explain why Ley should not be terminated. (PRDFF ¶ 63.) At the hearing Wisconsin Bell and Ley – who was again represented

3

by the Union – reviewed Ley's handling of the August 1st and August 3rd 2007 phone calls. Wisconsin Bell terminated Ley's employment the day after the hearing. (PRDFF ¶ 69.)

After her termination Ley obtained a Right to Sue Letter from the Equal Employment Opportunity Commission ("EEOC") and then filed the present suit claiming that Wisconsin Bell's termination violated her FMLA and ADA rights. Ley's complaint alleges that Wisconsin Bell terminated her because of her disability and because she took FMLA medical leave.

**II. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *McNeal v. Macht,* 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson,* 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In addition to the federal rule governing summary judgment procedure, parties are expected to comply with the additional requirements set forth in this district's local rules. *See* Civil L.R. 56. The local rule requires the moving party to provide either a stipulation of facts or a set of proposed findings of undisputed facts on which the motion is based with appropriate citations to evidence in the record that supports the proposed finding. Civil L.R. 56(b)(1)(B), (C). If the opposing party believes there is evidence which places any of the proposed findings of fact submitted by the moving party in dispute, the opposing party must file a response noting the dispute supported by a citation to the record evidence in support thereof. Civil L.R. 56(b)(2)((B)(i). The opposing party may also submit proposed findings of additional facts that warrant denial of the motion, again with appropriate citations to the record. It is the parties' proposed findings of fact, together with the responses thereto that are to form the basis of the ruling the court is then expected to make on the motion for summary judgment. Thus, "[a]ssertions of fact in the parties' supporting memorandum must refer to the corresponding numbered paragraph of the statement of facts, statement of additional facts, or statement of stipulated facts." Civil L.R. 56(b)(6).

**III. Analysis**

**A. Jurisdiction**

Ley claims that Wisconsin Bell violated two federal laws: the ADA and FMLA. This Court has subject matter jurisdiction over Ley's ADA claim under §706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, [42 U.S.C. §2000e-5(f)(3)] which is incorporated by §107(a) of

5

the ADA [42 U.S.C. 12117(a)]. Jurisdiction over Ley's FMLA claim is conferred by 29 U.S.C. § 2617(a)(2).

### B. ADA and FLSA

The ADA sets forth the following general rule with respect to employment discrimination against individuals with qualifying disablities:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The FMLA entitles any eligible employee suffering from a serious health condition that renders her unable to perform the functions of her position to twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2612(a)(D). The FMLA makes it unlawful for an employer to interfere with an employee's attempt to exercise any FMLA rights. *Id.* § 2615(a)(1). It also forbids an employer from retaliating against an employee who exercises FMLA rights. *See id.* § 2615(a)(2) (prohibiting discrimination against an individual who opposes practices made unlawful by the FMLA); *id.* § 2615(b) (prohibiting discrimination against persons who participate in or institute FMLA proceedings or inquiries). The FMLA therefore contemplates the retaliation theory of recovery Ley advances here. *See Hoge v. Honda Am. Mfg., Inc.,* 384 F.3d 238, 244 (6th Cir. 2004).

### C. Direct and Indirect Methods of Proving ADA and FLSA Violations

A plaintiff can establish a claim of wrongful discharge under the ADA and the FMLA under either the direct or indirect methods of proof. *Mobley v. Allstate Ins. Co.,* 531 F.3d 539, 548 (7th Cir. 2008) (ADA); *Long,* 585 F.3d at 349 (FMLA).

### 1. Direct Method

The direct method of proof requires a plaintiff to offer direct or circumstantial evidence that the employer's decision to terminate was motivated by the employee's disability or use of FMLA leave. *Long,* 585 F.3d at 349. Direct evidence is typically an admission by the decision-maker that he acted with discriminatory or retaliatory intent. Circumstantial evidence allows a reasonable fact-finder to infer that discriminatory or retaliatory animus motivated the decision-maker to take an adverse employment action against an employee. *Id.* at 349-350.

Under the direct method, a plaintiff must present evidence that his employer took materially adverse action against him on account of his protected activity or status. *See Phelan v. Cook County,* 463 F.3d 773, 787 (7th Cir. 2006) (setting forth showings required to prove retaliation in the employment context). For example, under the FMLA, the direct method of proof requires proof of a causal connection between the plaintiff's taking of FMLA leave and the materially adverse employment action. *Long,* 585 F.3d at 350. Under the ADA a plaintiff would have to show that the decision to terminate was motivated by the employee's disability.

Under the direct method, if the plaintiff's evidence is thereafter contradicted by the employer:

> the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation.

*See Stone v. City of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 644 (7th Cir.2002).

### 2. Indirect Method

Under the indirect method, a plaintiff must first establish a prima facie case of discrimination, which requires proof that: (1) she is disabled within the meaning of the ADA for an

7

ADA claim, or that she engaged in statutorily protected activity (i.e., that she took leave under the statute) for an FMLA claim; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered a materially adverse employment action (e.g., termination); and (4) she was treated less favorably than similarly situated employees who are not disabled or did not use FMLA leave. *Mobley,* 531 F.3d at 548; *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 634-635 (7th Cir. 2009). If the plaintiff meets this burden, then the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its actions. If the employer satisfies that burden, then the burden shifts back to the plaintiff to show that the employer's reason is false and a pretext for discrimination. *Timmons v. General Motors Corp.,* 469 F.3d 1122, 112 (7th Cir. 2006); *Cracco,* 559 F.3d at 635.

### C. Direct Support for Ley's ADA and FLSA Claims

A number of facts tend to directly support Ley's allegation that Wisconsin Bell terminated her in violation of the FMLA. First Plaintiff claims that shortly after she returned to work from FMLA leave her boss, Manager Devroy, made a comment to Ley to the effect that "since you have missed so much time this year (on medical leave), you had better sell your butt off." (Pl.'s Additional Proposed Findings of Fact, Dkt. 24 at ¶ 19.). While Devroy denies making the statement (DRPF ¶ 19), a reasonable jury could find that Devroy indeed made such a statement. Whether Manager Devroy had discriminatory animus toward Ley presents an issue of material fact because Manager Devroy admits she recommended Ley's termination. The Court is not convinced by Wisconsin Bell's argument that even if Devroy made such a comment it should be considered nothing more than a "stray remark." (Reply Br. at 4.) Manager Devroy was the first manger to accuse Ley of customer mistreatment on the two August 2007 phone calls. Further, according to

8

Manager Devroy, Al Rockman the Senior Manager who actually terminated Ley "relied" on Manager Devroy "providing information regarding" Ley's performance on certain phone calls. (Devroy Dep., p. 17, 145, 147.) Because a reasonable jury could find that Manager Devroy harbored a discriminatory animus toward Ley for Ley's use of FMLA leave and because a reasonable jury could find that Manger Devroy made recommendations regarding Ley's termination, I conclude that genuine issues of material fact exist which preclude a grant of summary judgment. *See Anderson,* 477 U.S. at 248.

Wisconsin Bell contends that Manager Devroy "was not involved in the ultimate termination decision" and therefore argues that Ley has brought a "cat's paw" case, meaning that Ley seeks to hold Wisconsin Bell liable for the animus of a supervisor – Devroy – who was not charged with making the ultimate employment decision. (Def. Br. in Sup., Dkt. 19 at 6-7.) Under prevailing Seventh Circuit precedent Devroy, as a non-decision maker, would have to exert a significant degree of influence over the actual decision maker in order for Wisconsin Bell to be liable for discriminatory animus. *See Brewer v. Board of Trustees of the Univ. of Illinois,* 479 F.3d 908, 917 (7th Cir. 2007) ("For a nominal non-decision-maker's influence to put an employer in violation of Title VII, the employee must possess so much influence as to basically be herself the true 'functional . . . decision-maker'").

Wisconsin Bell's "cat's paw" analysis is questionable in light of a very recent Supreme Court decision which came out after Wisconsin Bell and Ley had briefed there respective positions in this case. Less than a month ago the Supreme Court issued its decision in *Staub v. Proctor Hosp.,* 131 S.Ct. 1186 (2011), holding that "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action,

and if that act is a proximate cause of the ultimate employment action, then the employer is liable." In *Staub* the Supreme Court reversed the Seventh Circuit which had granted judgment as a matter of law for a hospital sued by an employee who claimed he was terminated in violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA). 38 U.S.C.A. § 4311(c). The facts in *Staub* are, in many respects, analgous to those presented by Ley here. In *Staub* mid-level managers made anti-military remarks about the hospital employee and, though the mid-level managers where not the ultimate termination decision makers, they did take actions intended to cause adverse employment actions for the employee (namely issuing "corrective action" to the employee and alerting senior managers to the employees' performance problems). As such the Supreme Court concluded that the employee had shown that the mid-level manger's actions were motivated by discriminatory animus and were the proximate cause of the employee's eventual termination by senior managers. This analysis aligns with the Seventh Circuit's position that "[s]ummary judgment is generally improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." *Dey v. Colt Construction & Development Co.,* 28 F.3d 1446 at 1459 (7th Cir. 1994). Here a jury could conclude that Manager Devroy's statement regarding Ley's use of medical leave shows discriminatory animus and that Devroy provided factual information that affected Ley's termination. Wisconsin Bell admits that "Manager Cheryl Devroy, Manager Al Rockman, and GM Julene Baldwin were all involved to some degree in Ms. Ley's discharge." (DRPF, Dkt. 27 at ¶ 41.) In fact Manager Devroy "recommended the termination of Ms. Ley." (DRPF ¶ 43.) In light of these undisputed facts a jury could find that Ley's use of FMLA leave was a motivating factor in Wisconsin Bell's termination decision.

10

The "motivating factor" test used in USERRA and Title VII cases also applies to Ley's ADA and FLSA claims. *See Pernice v. City of Chicago,* 237 F.3d 783, fn. 3 (7th Cir. 2001) (Noting "a host of decisions holding that the ADA prohibits employment discrimination if a covered disability is one motivating factor, even if not necessarily the sole cause, of the adverse employment action."); *see also Goelzer v. Sheboygan County, Wis.* 604 F.3d 987, 995 (7th Cir. 2010) ("To succeed on a retaliation claim, the plaintiff does not need to prove that retaliation was the only reason for her termination; she may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision.'")

In addition to Devroy's statement and involvement in Ley's discharge, other circumstantial evidence supports Ley's allegations under the direct method of proof. For example Ley notes that in 2005 the call center's General Manager, Julene Baldwin, took it upon herself to personally visit the homes of Appleton call center workers who were out on medical leave at the time. Of course there is a seemingly innocuous explanation for such a trip – the General Manager claims she was motived by a sincere desire to look after the well being of her employees. But a less pure motivation for such a trip can also be reasonably supported by the evidence. A jury could find that because the General Manager was accompanied by the Attendance Manager on her visits to employees on medical leave, the General Manager's trip was actually motivated by a desire to get her employees to come off medical leave and return to work. The Attendance Manager, Pamela Schampers, stated in a declaration that General Manager Baldwin complained about medical leave almost every time a worker requested one and that the home visits were made because Baldwin wanted to intimidate the Appleton employees to shorten their medical leaves. (Schampers Decl. ¶ ¶ 12-29.) Wisconsin Bell argues that Schampers, in her declaration, fails to lay an adequate

foundation for Devroy's negative comments about FMLA leave. However there is no dispute that Schampers accompanied General Manager Baldwin on her road trip to visit employees who were on FMLA leave. A jury could look to this fact – having an attendance manager go to the homes of employees on FMLA leave – as evidence of General Manager Baldwin's motivations. These home visits by Baldwin and Schampers occurred over two years before Ley's termination in 2007. While the home visits may be too attenuated to have cause and effect bearing on Ley's termination they do provide circumstantial evidence of the Appleton call center's culture.

The timing of Manager Devroy's statement regarding Ley's need to "work her butt off" after Ley returned from medical leave has a much closer temporal link the termination date. Devroy made this statement shortly after Ley returned from medical leave and just six weeks before Plaintiff was terminated. Wisconsin Bell correctly notes that to create an issue of fact on summary judgment an alleged discriminatory comment must have been made around the time of the decision at issue. *See Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007); *see also Rush v. McDonald's Corp.,* 966 F.2d 1104, 1116 (7th Cir. 1992) ("[I]n order to suffice as evidence of racial animus in support of a claim of disparate treatment, the racial remarks must be relatively contemporaneous to the termination of employment and must be 'related to the employment decision in question.' ") Here Devroy's purported comments are both contemporaneous to her discharge and seemingly relate to Devroy's displeasure with Ley's use of medical leave.

In sum, I conclude that under the direct method Ley has offered sufficient direct and circumstantial evidence that Wisconsin Bell's decision to terminate was motivated by Ley's disability or use of FMLA. Accordingly summary judgment is improper.

### D. Indirect Support for Ley's FLSA and ADA Claims

Because I conclude that Ley has satisfied the requirements of the direct method an analysis of the indirect method is not required. However, for completeness, I will discuss Ley's showings under the indirect method.

Ley easily satisfies two of the four requirements for proving ADA/FMLA violations under the indirect method. That is, she had a disability (MS) and took medical leave, and she suffered a materially adverse employment action (termination). Wisconsin Bell does not quibble over these facts but instead argues that Ley has failed to make the other two required showings: that she was meeting her employer's legitimate employment expectations and that she was treated less favorably than similarly situated employees who were not disabled or did not use FMLA leave. *Mobley,* 531 F.3d at 548; *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 634-635 (7th Cir. 2009). Wisconsin Bell supports both arguments by discussing Ley's allegedly poor handling of several phone calls. This allows Wisconsin Bell to argue that Ley – by improperly handling phone calls – was not meeting the company's legitimate employment expectations. It also allows the company to argue that the "similarly situated" employees Ley compares herself to are distinguishable insofar as they did not engage in "misconduct of comparable seriousness." (Reply Br. at 11.)

In light of Wisconsin Bell's arguments this Court must analyze the August phone calls which – according to Wisconsin Bell – are the basis for Ley's termination. To determine whether Ley's job performance was satisfactory, this Court looks at Ley's performance "through the eyes of her supervisors." *Gates v. Catepillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). Wisconsin Bell has high expectations for its customer service representatives and the manner in which they treat of customers. (PRDFF ¶¶ 12-17.) Customer service representatives are expected to treat callers

with courtesy, never to argue with customers, and never to hang up on a customer while the customer was still speaking. (*Id.*) Though Ley had received a "final written warning" for her handling of a September 2006 phone call, it is unclear from the record whether she was actually on thin ice with the company before or after that point in time. Had Wisconsin Bell warned her about poor performance on any occasions prior to September 2006? It would seem strange for an employee with five years in the call center to suddenly receive a *final* written warning for a poorly handled phone call unless there had been earlier instances of poor performance. But neither party has presented any facts related to poor performance prior to September 2006. Instead this Court is left only with the undisputed fact that Ley had received dozens of awards, certificates, and congratulatory notes for her work. (DRPF ¶ 9.) It is also unclear what practical consequences and ramifications resulted from a "final written warning" at the Appleton call center. The "final written warning" letter states only that further misconduct "could lead to more serious corrective action up to and including termination." (Ley Dep., Dkt. 20-2, at Ex. 20.) Was Ley on a probationary status? If so, for how long? What is clear is that Ley had at least two other instances of allegedly poor customer service within one year of receiving the "final written warning."

Wisconsin Bell has not provided the recordings of the two August 2007 phone calls to the Court but the company alleges that Ley hung up on the customers prematurely. Even if Ley hung up on the callers in violation of company policy it is difficult to assess the nature, tone, and substance of the two phone calls by reading selected excerpts from the parties' various submissions. And it is the nature and tone of the calls that Wisconsin Bell relies on to distinguish Ley's termination from non-disabled call center employees who hung up on callers but who were not terminated. For example Wisconsin Bell distinguishes Ley's decision to hang up on the two August

14

phone calls from the actions of a different employee who hung up on a caller. (Reply Br. at 10.) Notably, the other employee was not disabled, had not taken FMLA leave, and was not fired. (*Id.*) The other employee hung up on a caller after the caller used profanity. (*Id.*) While Ley's decision to hang up on a caller was not based on the callers' use of profanity, both situations require an assessment of the overall context and tone of the phone calls. Whether Ley mistreated the two customers is an issue subject to multiple interpretations, even when viewing Ley's performance through the eyes of her supervisors, and so summary judgment should not be granted. *See Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) ("[s]ummary judgment . . . is inappropriate where the evidence is susceptible of different interpretations or inferences").

In sum Ley has satisfied her burden under the indirect method of proof because two of the elements are undisputed and she has raised genuine issues of material fact concerning the other two elements – whether she was meeting Wisconsin Bell's legitimate employment expectations and whether she was treated less favorably than similarly situated employees. These two issues, as well as Wisconsin Bell's proffered reason for termination all turn on a required factual analysis of the disputed phone calls. Thus, even if the Court has incorrectly concluded that Ley satisfied her burden under the direct method, summary judgment still would not be proper under the indirect method.

## CONCLUSION

Accordingly and for the reasons set forth herein Wisconsin Bell's motion for summary judgment (Dkt. 18) is **DENIED**. When viewing the facts in a light most favorable to Ley there are

genuine issues of material fact regarding Wisconsin Bell's decision to terminate Ley's employment.

The Clerk is directed to schedule this matter for a scheduling conference.

**SO ORDERED** this ___10th___ day of May, 2011.

                                               _s/ William C. Griesbach_
                                               William C. Griesbach
                                               United States District Judge